UNITED STATES DISTRICT COURT
For the Western District of Pennsylvania

Plaintiff:
    Steven J. Hayes MQ5447
    SCI @ Greene
    175 Progress Dr.
    Waynesburg, PA 15370

Case Number: 17-1327

Date: 10/10/17

vs.

Defendants:
1. Robert Gilmore, Facility Manager SCI Greene
2. Tracey Shawley, Grievance Officer SCI Greene
3. Doctor Pillai, Treating Psychiatrist SCI Greene
4. Earl Baker, RN SCI Greene
5. Dan Karpency, RN SCI Greene
6. PSS Waine, Treating Psych SCI Greene
7. PSA Lindsey, Treating Psych SCI Greene
8. Adam Sedlock, Treating Psychologist SCI Greene
9. Shelly Mankey, Unit Manager SCI Greene
10. Major Coro, Unit Major, SCI Greene
11. LT Stickles, Unit Brass SCI Greene
12. Dorina Varner, (SOIGA) Central Office
13. Robert Marsh, Chief Psych Central Office
14. John/Jane Doe's to be named after review of discovery documents

**RECEIVED**
OCT 16 2017
CLERK, U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

*All named defendants sued in both individual and official capacity.

## Jurisdiction

I can bring my complaint in Federal Court because I am suing Pennsylvania State Employees for deliberate indifference/failure to protect with atypical and significant hardship conditions that violated my 8th Amendment rights under 42 U.S.C. section 1983 and 28 U.S.C. section 1331.

## Prior Lawsuit Dealing With Same Set of Facts

1. A. Hayes v Gilmore 2:17-cv-174 (Western District of PA)
   B. Magistrate Judge Maureen P. Kelly
   C. Unjust DTU Punishment and Failure to Protect
   D. Voluntary Dismissed without prejudice on August 25, 2017

<u>Note</u>:  The cause of action "Failure to Protect" is being raised in this refiled complaint.

The cause of action "Unjust DTU Punishment" may be refiled in the future by defense team and PA attorney.  At present time in appears this issue will be resolved.

## Qualified Immunity

The named defendants do not have a qualified immunity defense.  They were aware of potential danger by my D-Code status.  Specifically, diagnosis of major depression (suicidal history), PTSD, anxiety, and OCD.  In Policy 13.8.1 section 2 subsection K @ 1 (c) #1-22 list numerous stressor that were present and ignored by the defendants.  @ K 2 (c) "screening + assessment" it states a suicidal inmate <u>shall</u> never be left alone.  K 2 (c) is based on psychiatric code 4-4257.  @ K 2 (a) policy mandates <u>every</u> contact employee will receive training in suicide prevention.  Most named defendants are contact employees.  Lastly 13.8.1 section 3 @ D (1B + 1C) the guidelines for Psychiatric Observation Cell (POC) were completely disregarded.

It should be noted civil case D.R.N. vs Wetzel 1:13-cv-635 further made awareness with newly established policy section 14 of 13.8.1 that created the mental health unit where the above policy violations took place.

The named defendants actions disregarded clearly established protection policies and defied common sense.  This goes beyond common sense/deliberate indifference therefore no qualified immunity defense.

## Administrative Remedies

2

Administrative remedies have been exhausted regarding this cause of action. Grievance #654303 was written on November 29, 2016 and it exhausted on July 21, 2017, (7 months to exhaust). During this period the defendants initially refused to accept the grievance, then they consistently violated grievance policy and in all responses they never directly addressed the policy violation issue or the 2nd requested remedy (secure + preserve evidence for litigation).

There was no grievance system available at Sci-Greene

### History

I am a Connecticut inmate now serving my sentence in Pennsylvania due to Inter-State Compact. I have no Pennsylvania sentence. I am an ex-death-row prisoner now serving life-without-parole, imposed by the New Haven Superior Court. I am presently @ SCI-Greene where the events that give rise to this complaint occurred.

### Personal Involvement

1. <u>Doctor Pillai</u>: Per a response letter, dated _See Letter_, authored by defense counsel Sandra Kozlowski, it was Doctor Pillai who gave final instructions on November 23, 2016 to violate clearly established policy by disregarding (POC) placement and to leave a suicidal prisoner alone for 6 days with no psych consult or psych treatment.

2. <u>R.N. Earl Baker</u>: Per the same letter it was R.N. Baker who followed Dr. Pillai's order that violated policy and basic common sense.

3. <u>Dan Karpency</u>: Per the same letter Mr. Karpency is listed through specific involvement was not identified. Discovery evidence the defendants were ordered to

preserve should show what role Mr. Karpency Played. *(The letter identifying prior three defendants is included after personal involvement section.) *

4. <u>PSS Waine</u>: Pss Waine was treating Psych worker prior to and on November 23, 2016. Because of Personal conversations he was aware of past suicide attempts, present suicidal stressors and personally observed a suicidal prisoner being returned to a regular cell, not POC.

5. <u>PSA Lindsey</u>: PSA Lindey was the responding psych worker on November 23, 2016 regarding the 1st suicide attempt. She initially left a suicidal prisoner alone.

6. <u>Adam Sedlock</u>: Mr. Sedlock is senior supervisor for PSS Waine and PSA Lindsey. He is psychologist for all DTU prisoners. As supervisor and PRC member, he was aware of declining mental health. As per policy 13.8.1 section 2 K 2 (A) he was notified of 1st attempt but never did evaluation. He also denied grievance #654303 by avoiding to acknowledge the clear policy violations.

7. <u>Shelly Mankey</u>: She was unit manager on November 23, 2016 and as per policy 13.8.1 section 2 K 2 (A) was notified of 1st attempt. As unit manager and PRC member she was aware of declining mental health due to suicidal stressors identified in 13.8.1 section 2 K 1 (C) #1-22. It was also her lie in TV grievance that triggered 2nd attempt.

8. <u>Major Caro</u>: He was 1st shift DTU Major on November 23, 2016. As per policy 13.8.1 section 2 K 2 (A) he was notified of 1st attempt. As PRC member he was aware of declining mental health due to suicidal stressors identified in 13.8.1 section2 K 1 (C) #1-22.

9. <u>LT Stickles</u>: He was responding LT on November 23, 2016 regarding 1st attempt. As per policy 13.8.1 section 2, K 2 (A) he is a contact employee trained in suicide prevention. He personally informed me (on video) I was returning to my cell because no POC cells were available. He was also the person who denied my TV grievance (without investigation) based on unit manager Mankey's lie, which triggered 2nd attempt.

10. <u>Robert Gilmore</u>: As the facility manager it is his responsibility to insure the safety of prisoners, staff training and compliance with policy by staff. He failed in all objectives based on what occurred November 23, 2016 thru December 1, 2016. He became personally involved when he upheld Mr. Sedlocks denial of #654303. His rubber stamp denial continued danger to personal safety.

11. <u>Tracy Shawley</u>: As Grievance officer and assistant to Mr. Gilmore it is her responsibility to process grievances with merit. Instead she initially refused to accept grievance #654303 in an attempt to block the grievance process.

12. <u>Robert Marsh PHD</u>: As Chief of Psychological Service it is his responsibility to insure the integrity of mental health services thru-out the Dept. of Corr., and compliance with the mental health policy. He became personally involved when he upheld prior denials with Grievance #654303. His rubber stamp denial shows total disregard for personal safety at Sci-Greene.

13. <u>Dorina Varnia</u>: As Chief Grievance Officer she is to insure integrity with the grievance. She became personally responsible when she ignored several clearly identified grievance policy violations by named defendants.

14. <u>John/Jane Doe's</u>: After the review of evidence defendants may be added.



COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL

Office of Attorney General
6th Floor, Manor Complex
564 Forbes Avenue, PA 15219
PH: 412.565.2569
FX: 412.565.3028
skozlowski@attorneygeneral.gov

September 9, 2017

Steven Hayes, MQ5447
SCI Greene
175 Progress Drive
Waynesburg, PA 15370

**Re:  Hayes v. Gilmore, et. al.**
W.D. Pa. Civil Action No. 17-174

Dear Mr. Hayes:

Pursuant to the Honorable Maureen P. Kelly's Order of April 12, 2017, the identities and service information of the individuals whom you identified as John/Jane Doe in your Supplement (ECF 14) are as follows:

| Earl Baker, RN |
| --- |
| Dan Karpency |
| Dr. Pillai, Psychiatrist |

SCI Greene
175 Progress Drive
Waynesburg, PA 15370

Dr. Pillai instructed Nurse Baker to leave you on E-Block on 11-23-2016. Additionally, Dr. Pillai instructed staff to remove all of your belongings from the cell. All of the individuals can be served at SCI Greene.

Very truly yours,

By: _Sandra A. Kozlowski_
    Sandra A. Kozlowski
    Deputy Attorney General
    Civil Litigation

## Nature of the Case

1. At approximately 8:30am on November 23, 2016 I was denied a legal call. These calls are critical to my mental stability and pending criminal and civil cases. When I was denied this legal call I threatened suicide, requested Psych, and packed my property. As per policy unit staff called Psych.

2. At approximately 8:45am PSA Lindsey came to my cell. I pointed out my packed property, explained my issues and threatened to "do something" if I did not get my call. I was not pulled out of my cell as 13.8.1 section 2 2 K mandates and she left stating "I'll see what I can do" violating 2 K (2C) "A suicidal prisoner shall never be left alone" also violating PA Psych code 4-4257.

3. At approximately 9:30am, when no one returned, I began to cut my wrist grinding side to side and back and forth on the broken stainless steel paper tube [reject] in cell G-C-18, broken over 60 days pending work order. I scraped my wrist periodically for approximately 45 minutes. I wrote "no more punishment" in Blood [black struck out] on the cell wall, by the door. The only reason I was able to do this was a suicidal prisoner was left alone. (Violation of 13.8.1 section 2 K 2(C) and PA Psych code 4-4257)

4. At approximately 10:15am Corrections Officer Standard and Hall came to my door to serve lunch, when They [he struck out] saw the blood message I showed my wrist and the incident was called in as 13.8.1 section 2 mandates.

5. A LT(name unknown) came to my door and to avoid being maced I cuffed up. (It's a common DTU practice to mace suicidal inmates.) On handheld video I was escorted to the unit med triage room. LT Stickles among other staff was present. PSS Waine was called to evaluate me. In a short 2 minute conversation, in an agitated manner,

6

I told him of the trigger issue, denied legal call, and the added stressors of no psych meds that were ordered November 9, 2016, my co-defendant being treated better, my broken TV. He left to check on the legal call and meds. He never returned to treatment room... The nurse (Name unknown) dressed my wound while I stated numerous times "you're lucky I don't have a razor." A still photograph was taken of the wound. *All facts stated herein are on hand held video.

6. I was told by LT. Stickles I would return to my cell, (G-C-18), because no POC cells were available. *The audio from hand held video supports this statement came from LT Stickles. 13.8.1 section 2 K 2 (A) shows he was trained in suicide prevention. Still he ignored policy 13.8.1 sections 2 K 2 (C) "A suicidal inmate shall never be left alone and policy 13.8.1 section 3 D (1B, 1C) Guidelines for POC.

7. While in route back to my cell I saw PSS Waine in the hallway. He stated he E-mailed about my meds and I used my allotted calls for the month (the trigger for the 1st suicide attempt). This left the trigger event unresolved. I told him I needed to speak with him, then he stood by as a suicidal prisoner was escorted back to a regular cell with blood message on wall and item used in the 1st attempt still in cell. Violation of 13,8,1 section 2, K 2 (A) and (C) also section 3 D (1B), and basic common sense.

8. At approximately 12:30pm Group was convened in in the dayroom. I was on cell restriction and could not attend. At some point PSS Waine came in to facilitate a group. I yelled out several times to speak with him. I was distressed from still no legal call and no psych meds. PSS Waine motioned he heard me. I continued to yell out to him and at some point he came to my cell with a corrections officer with

7

mace because he assumed I was cutting up again. I told him I was not but I was clearly anxious from no call and no meds. My property was still packed, and blood message still on the wall. His cell-side consult lasted 2 minutes when he left to check on legal call and meds. He never returned, violating 13.8.1 section 2 K 2(C).

9. At approximately 6:00pm mail and razors were passed out. I was still stressed and anxious over denied legal call and no meds. I was given mail and requested a razor, (I was not on razor restriction and unit staff appeared unaware of the earlier incident). Several grievances were denied to include TV grievance, denied by LT Stickles due to Mrs. Mankey's lie. (This was the trigger for the 2nd suicide attempt on November 23, 2016.) I believed this to be a sign to try again. My property was still packed and blood message still on the wall. I broke off the front guard of the razor and cut up my left arm. It bled heavy then slowed down. I cut 3-4 more time before I realized I needed to remove the blade completely to achieve depth. By this point the correction officer was at my door and to continue would have resulted in being maced, not death, so I gave up the razor when asked by the officer.

10. I was once again escorted to the unit med triage room. Once again hand-held video covered the escort. My wounds were bandage and photographed. I again vented about suicidal triggers. (Due to my highly agitated state I can remember no staff names.) No psych worker saw me. An off-site psych order (Dr. Pillai as per AAG Kozlowski) was no mattress, no property, safety gown/safety blanket only. Because no POC cells were available I went to G-D-14 (a DTU regular cell) with a correction officer outside my cell for approximately 1 ½ hours. Then a suicidal prisoner was left

alone for 6 days with no psych consult. Violation of 13.8.1 section 2 K 2 (B)(C)(D). As well as 13,8,1 section 3 D (1B, 1C).

11. For the next 6 days I laid on a steel bunk with no mattress. I had no property, no hygiene supplies, no shower, no reading material, no psych consult what-so-ever. I never received the e-mailed psych meds. Several times I unwrapped the gauze from my arm so as to hang from the cell shelf bracket. I did not hang only because, in my aggravated state, could not figure a way to die (the shelf was too low). I paced non-stop for 6 days. Staff tours were almost none on 1st shift, hourly on 2nd shift, and twice on hour on 3rd shift.

12. I finally saw a psychiatrist (name unknown) cell side on November 28, 2016 where meds were ordered. I was pulled out to see the same psychiatrist on November 29, 2016 and released from suicide watch.

13. Policy 13.8.1 section 2 K titled: Dealing with a potentially suicidal inmate and an inmate who attempts suicide; states at K 1 (C) #1-22 several suicidal stressors that were present and ignored. At K 2(A) every contact employee will receive training in suicide prevention . . .; named defendants are contact staff. At K 2 (C) A suicidal prisoner shall <u>never</u> be left alone is based on PA Psych Code 4-4257; both were ignored. At K 2 (B) (D) Psych staff shall assess the inmate; this was disregarded for 6 days after 2nd attempt. At 13.8.1 section 3 D titled: Guidelines for Psychiatric Observation Cells (POC). At D 1 (B) Every inmate on POC <u>shall</u> be within sight and sound of medical and/or operation staff at all times. A facility with an infirmary <u>shall</u> locate POC closed to med area; this was totally disregarded by defendants. At D 1

9

(C) Dept. discourages POC beyond 3 days; without Pscyh consult in 6 days staff had no idea of my mental condition.

## Grievance Exhaustion

14. On November 29, 2016 a grievance was written on the policy violations in previous paragraph #13. This became #654303. Remedy was to be transferred and secure and preserve evidence for anticipated civil action.

15. On November 30, 2016 Tracy Shawley improperly rejected grievance. I appealed on December 2, 2016. Tracy Shawley reversed her prior rejection and remanded for investigation on January 3, 2017.

16. After receiving <u>no response</u> by January 25, 2017, <u>as per policy</u>, I appealed to final review. On March 16, 2017 (SOIGA) Keri Moore improperly rejected final appeal.

17. On February 15, 2017 I received a back dated (1/24/17) response to grievance #654303 from Defendant Adam Sedlock. He denied the grievance, in his response he stated policy had been followed despite contrary physical evidence. Hand held video, block video, incident reports conclusively prove policy was completely disregarded. Defendant Sedlock never spoke to me.

18. On March 24, 2017 I appealed Defendant Sedlocks denial to facility manager Robert Gilmore. Robert Gilmore rubber stamped Defendant Sedlock's denial, on April 21, 2017, despite the physical evidence.

19. On April 26, 2017 final appeal was sent to (SOIGA) Keri Moore. On May 15, 2017 Dorina Varner referred incident to Defendant Robert March ( Chief of Psych Services) to investigate. On June 15, 2017 Defendant Marsh rubber stamped grievance denial. The handheld video alone conclusively proves policy was violated

and a complete disregard for personal safety. On June 21, 2017 I received Defendant Marsh's final decision.

## Conclusion

The handheld video, block video and incident reports conclusively prove the events of November 23, 2016 thru December 1, 2016 are true and accurate. Policy 13.8.1 section 2 and section 3 were completely disregarded by the named defendants and proved failure to protect and deliberate indifference.

The named defendants were well aware of declining mental health from consistent verbal and written complaints. They were aware of my past suicidal history a real threat to suicide, not gesture type. Their complete disregard for policy and basic common sense deny qualified immunity.

The way they completely disregarded grievance policy in an attempt to block the grievance system and ignore the issue of the grievance further prove continued failure to protect and deliberate indifference.

My well documented suicidal history, D-Code Status, and diagnosis of major depression, PTSD, Anxiety, OCD as well as the civil action D.N.R. vs Wetzel 1:13-cv-635 proves awareness of stressors and danger I was in and still they acted with deliberate indifference from November 23, 2016 thru December 1, 2016. Their callous disregard for policy allowed the 2nd attempt, following with cruel conditions.

## Requested Relief

A. Trial by Judge or Magistrate

B. Injunctive Relief

    a. To have on PSS on each DTU 1st, 2nd, and 3rd shift 365 days a year.

    b. To have Defendant Sedlock replaced with a competent psychologist, and Major Coro replaced with a trained psych professional.

    c. To be provided with weekly psychotherapy sessions as per 13.8.1 section 14 (C-17), until transfer to SCI@Albiaon or SCI@Dallas

C. Compensatory Damage:

    a. In the amount of twenty thousand dollars for the failure to protect and physical/emotional damage

D. Punitive Damage

    a. In the amount of forty thousand dollars for what is a clearly deliberate indifference and complete disregard for clearly established policy and basic common sense.

## Declaration Under Penalty of Perjury

I declare under the penalty of perjury that the facts stated in this complaint are true and accurate, and they are supported by video, documents, and policy.

Respectfully submitted by

*Steven J Hayes* (signature)

Steven J Hayes    MQ5447